1
2
3
4
5
6
7

Marquiz Law Office
Professional Corporation

3088 Via Flaminia Court
Henderson, NV 89052
Phone: (702) 263-5533
Fax: (702) 263-5532
Craig A. Marquiz, Esq.
NV Bar #7437

Attorney for Plaintiff

8

## UNITED STATES DISTRICT COURT

9

## DISTRICT OF NEVADA

10
11
12
13
14
15
16
17

| | |
|---|---|
| BRIAN MADDOX; | Case No.: |
| Plaintiff, | |
| v. | |
| CLEARINGHOUSE COMMUNITY DEVELOPMENT FINANCIAL INSTITUTION; DOUGLAS J. BYSTRY; KRISTY OLLENDORFF; DOES 1 through 100, inclusive; and ROE CORPORATIONS I through 100, inclusive, | **COMPLAINT & DEMAND FOR JURY TRIAL** |
| Defendants. | |

18
19
20
21
22

COMES NOW Plaintiff Brian Maddox ("Maddox"), by and through his counsel of record, Craig A. Marquiz, Esq. of the Marquiz Law Office, P.C., and for his claims against Defendant Clearinghouse Community Development Financial Institution ("CCDFI"), Douglas J. Bystry ("Bystry") and Kristy Ollendorff ("Ollendorff"), avers and alleges as follows:

23

## JURISDICTION & VENUE

24
25
26
27
28

1.      This Court possesses original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise out of Defendant CCDFI's violations of federal law, including, without limitation, Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. 2000e-2(a)(1), the Civil Rights Act of 1991, 42 U.S.C. 1981a, the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621, *et seq*. ("ADEA"), and the Older Workers Benefit Protection Act of 1990, 29 U.S.C. § 623.

2.     This Court also possesses supplemental jurisdiction over Plaintiff's state-law claims pursuant 28 U.S.C. § 1367 as those claims form part of the same case or controversy as the aforementioned jurisdictional granting claims.

3.     This Court also has original subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 as Plaintiff's claims involve parties from different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4.     Venue of this matter is properly before this Court as the underlying employment actions, causes of action and corresponding damages are alleged to have occurred within this forum.

## PARTIES

5.     Plaintiff Maddox is, and at all material times was, a Nevada domiciliary who was previously employed by Defendant CCDFI from March 1, 2012 through November 25, 2019, and prior to his termination served as the Chief Production Officer.

6.     Defendant CCDFI is, and at all material times was, a California corporation authorized to do and doing business in Clark County, Nevada, and which caused acts and events to occur within this forum from which Plaintiff's claims arose.

7.     Defendant Bystry is, and at all material times was, a California domiciliary; a married man acting for and on behalf of his marital community; the President and Chief Executive Officer of Defendant CCDFI; and who, in his individual capacity and for his individual advantage, caused acts and events to occur within this forum from which Plaintiff's conspiracy claim arose.

8.     Defendant Ollendorff is, and at all material times was, a California domiciliary; a married woman acting for and on behalf of her marital community; the Chief Credit Officer of Defendant CCDFI; and who, in her individual capacity and for her individual advantage, caused acts and events to occur within this forum from which Plaintiff's conspiracy claim arose.

9.     Maddox is informed and believes and thereon alleges that each of the Defendants designated herein as DOES 1 through 100 are the principals, agents, employees, servants or partners of each other or were otherwise acting under the direction and control of Defendant

2

1    CCDFI and/or ROE CORPORATIONS 1 through 100, inclusive.  The true names and capacities,

2    whether individual, corporate, associate or otherwise of DOES 1 through 100 and ROE

3    CORPORATIONS 1 through 100, inclusive, are unknown to Maddox at this time, who therefore

4    sues said Defendants by such fictitious names.  When the true names and capacities of said

5    Defendants are ascertained, Maddox will seek leave to amend his Complaint to identify the true

6    names and capacities of said Defendants.

7                                            **GENERAL ALLEGATIONS**

8            10.    Maddox fully incorporates herein by reference all allegations contained in

9    paragraphs 1 through 9 of this Complaint.

10           11.    By way of background, from March 1, 2012 through November 25, 2019,

11   Maddox was an exemplary employee for Defendant CCDFI  - one whose leadership and

12   community focus led that Company to the financial success it currently enjoys and a favorable

13   private equity recapitalization which, it has reaped, since Maddox's wrongful termination

14   on November 25, 2019.

15           12.    In this regard, it is no surprise that, through Maddox's efforts, Defendant CCDFI

16   emerged as the premier source for innovative and affordable commercial real estate loan

17   financing that was otherwise unavailable in the conventional lending market.

18           13.    In particular, Maddox's exemplary management of loan products yielded

19   Defendant CCDFI a 629 percent increase in commercial real estate lending (i.e., from

20   approximately $7 million in 2012 to $51 million in 2019) and a 9 percent increase in CCDFI's

21   total funded commercial real estate loans (i.e., from approximately $70 million in 2012 to $76

22   million in 2019).

23           14.    Further, Maddox's community involvement led Defendant CCDFI to greater

24   utilization of the Federal Home Loan Bank of San Francisco ("FHLBSF") programs which

25   increased CCDFI's profile among low-income communities throughout the southwest region, as

26   evidenced by Defendant CCDFI's receipt of AHEAD Grants and Affordable Housing Program

27   Awards.

28

15.     Notably, Maddox's professional accomplishments, community recognitions and loan committee and board member service included, without limitation: (a) the Wells Fargo Next Award (2012); (b) the Urban Chamber of Commerce Minority Advocate Award (2014); (c) the Accion Volunteer of the Year Award; (d) the Catholic Charities Multifamily Affordable Housing Board; (e) the United Way Young Philanthropist Grants Committee; (f) the Nevada H.A.N.D. Board of Directors; (g) the Idaho-Nevada CDFI Board of Directors; (h) the Partners for a Common Good Loan Committee; (i) Dream Spring Loan Committee; and (j) a Board Member with the Foundation for an Independent Tomorrow.

16.     From approximately April 2016 until October 2019, Maddox had a consensual romantic relationship with a coworker at CCDFI.

17.     During their relationship, Maddox and his coworker discussed the unfair and discriminatory treatment that Maddox had been forced to endure during his employment at CCDFI (e.g., without limitation, racial slurs and derogatory comments made to him by Bystry) and Maddox's anticipated filing of a racial discrimination action with the EEOC to address same.

18.     At the end of their amicable relationship, Maddox's co-worker believed it would be best for her to leave her current position at CCDFI and seek employment with another company.

19.     After tendering her resignation of employment, Maddox's coworker participated in an exit interview with CCDFI's Director of Operations, Kathy Bonney, and at that time disclosed, among other things: (a) the consensual relationship she had with Maddox; (b) Maddox's anticipated filing of an EEOC racial discrimination action against CCDFI; and (c) Maddox's knowledge of a prior sexual relationship between Bystry (a white male) and Ollendorff (a white female) while the two were employed at CCDFI.

20.     Upon information and belief, Bonney immediately notified Bystry of same, and, in response, Bystry concocted a plan to terminate Maddox's employment so that he could silence Maddox about the Bystry / Ollendorff relationship and undermine Maddox's credibility in advance of his anticipated racial discrimination claim.

21.     To that end, Bystry authorized CCDFI's payment of approximately $65,000 to Maddox's coworker in exchange for her written acknowledgment that Maddox exerted undue influence over her as a subordinate employee and that he coerced her into having a romantic relationship with him so that CCDFI could claim Maddox violated the Company's Fraternization Policy.

22.     That Policy, which was never previously enforced, provided as follows:

> The Company recognizes that working relationships may also become social or romantic relationships.  Sometimes these social or romantic relationships can result in misunderstandings, conflicts of interest, complaints of favoritism, claims of sexual harassment and employee morale or dissention problems.  Therefore, the Company requests that an employee who is romantically involved with another employee whether or not involvement is with a supervisor or other management official, immediately and fully disclose the relevant circumstances to the President/CEO. Depending on the circumstance, the Company may take whatever action appears appropriate when, in the opinion of the Company, their personal relationship may create a conflict of interest, cause disruptions, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, or morale. Failure to disclose facts may lead to disciplinary action, up to and including termination.

23.     Bystry, upon information and belief, disclosed his plan to Ollendorff (Maddox's immediate predecessor who was threatened by Maddox's success and exemplary performance) and enlisted her assistance in accomplishing same.

24.     In furtherance of that conspiracy, Ollendorff purposefully delayed her department's processing of Maddox's loan packages and the approval process, directing CCDFI loan processors to process her department's loans first (to the detriment of Maddox and his customers) so that Ollendorff could undermine Maddox's performance, afford CCDFI a performance-based reason to terminate Maddox's employment while, simultaneously, eliminating her perceived competition.

25.     When Maddox complained to Bystry of the negative impact that Ollendorff's directive was having on his customers and demanded that Bystry initiate an investigation into same, Bystry reluctantly agreed and, in response, only performed a cursory review of the approval process – a review which Bonney subsequently acknowledged was inappropriate and

failed to adequately address Ollendorff's manipulation of corporate processes for her own benefit and gain, and the detriment of Maddox and his customers.

26.     As a direct, proximate and foreseeable cause of Defendants' egregious conduct, Maddox's honor, integrity and reputation were irrefutably tarnished and, even more troubling, CCDFI's wrongful termination of Maddox extinguished his rightful entitlement to the following sums: (a) his 2019 bonus (previously declared by CCDFI to be $150,000, but which CCDFI has not yet paid); (b) a five percent (5%) salary increase for 2020 (previously declared by CCDFI to be an $11,000 increase, increasing Maddox's annual salary to $220,000 - which was not provided due to CCDFI's termination of Maddox); (c) a $700,000 executive bonus due from a private equity recapitalization initiative (previously declared by CCDFI, but which CCDFI has not yet paid); (d) accrued and accruing interest on all such sums, until paid in full; and (e) all such other and further relief as this Court deems just and proper under the circumstances.

27.     Further, as a direct, proximate and foreseeable cause of Defendants conduct, Maddox has been required to retain the services of an attorney to pursue his affirmative claims for relief and, therefore, is entitled to reasonable attorney's fees and costs incurred in the prosecution of this action, plus, post-judgment attorney's fees and costs.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

28.     Maddox exhausted all available administrative remedies as a precursor to instituting the instant civil action.

29.     Notably, following his termination and within the time provided by applicable law and regulation, Maddox filed a formal complaint with the Nevada Equal Rights Commission ("NERC") and the Equal Employment Opportunity Commission ("EEOC").

30.     In that complaint, Maddox averred, among other things, that he was wrongfully discharged for having a consensual romantic relationship with another employee at Defendant CCDFI) because of his race (African American) and age (over 40), while others, not of his protected class, were not discharged or otherwise reprimanded for engaging in the same or similar relationships.

31.     On January 6, 2021, the EEOC issued a Notice of Right to Sue letter.

32.     This action has been timely filed within ninety (90) days of Maddox's receipt of the EEOC's notice of final agency administrative action and, thus, is ripe for adjudication.

### FIRST CAUSE OF ACTION
**(Declaratory & Injunctive Relief - CCDFI)**

33.     Maddox fully incorporates herein by reference all allegations contained in paragraphs 1 through 32 of this Complaint.

34.     Defendant CCDFI, among other things: (a) has failed, refused and neglected to honor its obligation to pay Maddox its $150,000 declared bonus for Plaintiff's 2019 performance and his $700,000 declared executive bonus related to CCDFI's private recapitalization initiative; (b) wrongfully discharged Maddox on pretextual grounds; and (c) placed erroneous information in his employment file.

35.     Defendant CCDFI contends that it is not obligated to pay Plaintiff any such sums.

36.     Therefore, a justiciable controversy exists between the parties.

37.     The parties' respective interests are adverse to one another.

38.     Maddox has a legally protectable interest in the outcome of this Court's resolution of said dispute.

39.     This issue is ripe for adjudication.

40.     As a direct, proximate and foreseeable cause of Defendant CCDFI's failure to honor is contractual obligations, Maddox seeks an Order from this Court compelling Defendant CCDFI to: (a) honor its obligation to pay Maddox the 2019 declared performance bonus of $150,000 and the $700,000 declared executive bonus related to CCDFI's private recapitalization initiative; (b) accrued and accruing interest on both sums at the maximum rate allowed by law from the date of Defendant CCDFI's breach until paid in full; (c) Plaintiff's reasonable attorney's fees and costs pursuant to, without limitation, NRS 608.140; and (d) all such other and further relief as this Court deems just and proper, including, without limitation, statutory penalties and post-judgment attorney's fees and costs.

41.     Plaintiff further seeks an Order from this Court: (e) declaring that CCDFI's actions in terminating Maddox were improper and unjust; (f) compelling CCDFI to remove all

1   adverse information in and documentation from Maddox's employment file, in his discharge

2   papers and in its future employment verification procedures related to Plaintiff Maddox; and

3   (g) declare that CCDFI engaged in employment practices which discriminated against Maddox

4   on the basis of his race and age, and contrary to public policy.

5

6                              **SECOND CAUSE OF ACTION**
                      **(Employment Discrimination - Race - CCDFI)**

7          42.     Maddox fully incorporates herein by reference all allegations contained in

8   paragraphs 1 through 41 of this Complaint.

9          43.     Maddox, an African American male, is member of a protected class.

10         44.     Defendant CCDFI maliciously and/or recklessly discriminated against Maddox

11  on the basis of his race by terminating his employment from the Company on the pretense of an

12  improper consensual romantic relationship with a co-worker while other employees, not of his

13  protected class, who engaged in similar relationships were treated differently (i.e., not suspended,

14  terminated or otherwise disciplined by the Company).

15         45.     Notably, as the only African American executive and member of Defendant

16  CCDFI's Executive Team during his term of employment, Maddox was singled-out,

17  discriminated against and treated differently than his non-minority executive counterparts in

18  violation of the terms and conditions of Plaintiff's employment, Title VII of the Civil Rights Act

19  of 1964, as amended by the Civil Rights Act of 1991, and equivalent law from the State of

20  Nevada.

21         46.     As a direct, proximate and foreseeable cause of CCDFI's egregious conduct,

22  Maddox sustained, and continues to incur, compensatory damages in amounts to be established

23  at trial, but which include, without limitation, inconvenience, injury to his professional standing,

24  and damage to his character and reputation.

25         47.     Further, Defendant CCDFI's conduct was, and is, evil, intentional, grossly

26  improper, and performed with a conscious disregard for Plaintiff's rights and, as a result,

27  Maddox is entitled to an award of punitive damages.

28  . . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### THIRD CAUSE OF ACTION
**(Employment Discrimination - Age - CCDFI)**

48.     Maddox fully incorporates herein by reference all allegations contained in paragraphs 1 through 47 of this Complaint.

49.     Maddox, who was 51 years old at the time of his termination, was a member of a protected class.

50.     Defendant CCDFI maliciously and/or recklessly discriminated against Maddox on the basis of his age in violation of the terms and conditions of his employment, the ADEA of 1967, 28 U.S.C. § 621, the Older Workers Benefit Protection Act of 1990, 29 U.S.C. § 623, and equivalent law from the State of Nevada.

51.     Notably, Defendant CCDFI failed to apply or otherwise follow the Company's stated policies regarding, among other things, progressive discipline; and, due to his age, CCDFI subjected Maddox to harsh and unreasonable standards not previously applied by the Company when it addressed identical issues and reached inconsistent results.

52.     As a direct, proximate and foreseeable cause of CCDFI's egregious conduct, Maddox sustained, and continues to incur, compensatory damages in amounts to be established at trial, but which include, without limitation, inconvenience, injury to his professional standing, and damage to his character and reputation.

53.     Further, Defendant CCDFI's conduct was, and is, evil, intentional, grossly improper, and performed with a conscious disregard for Plaintiff's rights and, as a result, Maddox is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
**(Tortious Discharge - Violation of Public Policy - CCDFI)**

54.     Maddox fully incorporates herein by reference all allegations contained in paragraphs 1 through 53 of this Complaint.

55.     In Nevada, a wrongful termination claim provides a former employee with a remedy where, as here, an employer has wrongfully terminated that employee's employment in violation of public policy.

56.    Here, Defendant CCDFI pretextually applied its Fraternization Policy in a disguised attempt to undermine Maddox's credibility and to thwart his anticipated filing of a racial discrimination complaint against CCDFI with the EEOC.

57.    Notably, an employer tortiously discharges an employee when, as here, it retaliates for an employees actual or threatened exercise of labor and employment rights which are consistent with, or otherwise supportive of, sound public policy and the common good.

58.    Defendant CCDFI's retaliatory termination of Maddox for his anticipated whistle-blowing of CCDFI's racially discriminatory practices to the EEOC and NERC was contrary to the sound public policy of the State of Nevada and its declared prohibition against such unlawful employment practices under NRS 613.330 and NRS 613.340.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract / Implied Oral Promise - CCDFI)**

59.    Maddox fully incorporates herein by reference all allegations contained in paragraphs 1 through 58 of his Complaint.

60.    The parties' verbal agreements / implied oral promises regarding Defendant CCDFI's payment of its declared 2019 performance bonus (i.e., $150,000) and declared executive bonus from its private recapitalization initiative (i.e., $700,000) to Maddox constitute valid and enforceable contracts between Defendant CCDFI and Maddox.

61.    Pursuant to those agreements, Defendant CCDFI was, and is, obligated to pay Maddox for all earnings due.

62.    Defendant CCDFI, however, has failed, refused and neglected to do so.

63.    As a direct, proximate and foreseeable cause thereof, Defendant CCDFI has materially breached the parties' agreements.

64.    As a direct, proximate and foreseeable cause of Defendant CCDFI's contractual breaches, Maddox has incurred damages including, without limitation, (a) unpaid earnings, including, without limitation, his 2019 declared performance bonus of $150,000 and his $700,000 declared executive bonus related to CCDFI's private recapitalization initiative; (b) accrued and accruing interest thereon at the maximum rate allowed by law from the date of

Defendant's breach until paid in full; (c) Plaintiff's reasonable attorney's fees and costs pursuant to, without limitation, NRS 608.140; and (d) all such other and further relief as this Court deems just and proper, including, without limitation, statutory penalties and post-judgment attorney's fees and costs.

### SIXTH CAUSE OF ACTION
(Conversion - CCDFI)

65.     Maddox fully incorporates herein by reference all allegations contained in paragraphs 1 through 64 of his Complaint.

66.     Pursuant to the parties' verbal agreements / implied promises, Maddox was entitled to receive, in addition to his base salary, a declared $150,000 performance bonus for 2019, plus a declared $700,000 executive bonus related to Defendant CCDFI's private recapitalization initiative.

67.     Defendant CCDFI, however, has failed, refused and/or neglected to pay Maddox these sums.

68.     As a direct and proximate cause thereof, Defendant CCDFI has converted Plaintiff's earnings for its own use, benefit and gain.

69.     As a direct, proximate and foreseeable cause thereof, Maddox has incurred damages including, without limitation: (a) unpaid earnings, including, without limitation, his 2019 declared performance bonus of $150,000 and his $700,000 declared executive bonus related to CCDFI's private recapitalization initiative; (b) accrued and accruing interest thereon at the maximum rate allowed by law from the date of Defendant's breach until paid in full; (c) Plaintiff's reasonable attorney's fees and costs pursuant to, without limitation, NRS 608.140; and (d) all such other and further relief as this Court deems just and proper, including, without limitation, statutory penalties and post-judgment attorney's fees and costs.

70.     Moreover, Defendant CCDFI's conduct was, and is, oppressive, malicious, evil, intentional, grossly improper, and performed with a conscious disregard for Plaintiff's rights, thereby warranting the assessment of exemplary and punitive damages.

**SEVENTH CAUSE OF ACTION**
**(Conspiracy - Bystry & Ollendorff)**

71.     Maddox fully incorporates herein by reference all allegations contained in paragraphs 1 through 70 of his Complaint.

72.     Defendants Bystry and Ollendorff, in a concerted action, conspired together for the purpose of accomplishing an unlawful objective, including, without limitation, interfering with Maddox's business and contractual expectancies, his continued employment at CCDFI and his receipt of declared performance and executive bonuses.

73.     The express purpose of Defendant Bystry and Ollendorff's combination or conspiracy was to harm Plaintiff (i.e., to silence Maddox regarding the Bystry and Ollendorff relationship, undermine Plaintiff's credibility and deprive him of his vested, declared and earned performance and executive bonuses).

74.     As a direct, proximate and foreseeable cause of Defendant Bystry's and Ollendorff's egregious conduct, Maddox has sustained, and continues to sustain, injury, loss, damage and harm in an amount to be determined at trial, but which exceeds this Court's minimal jurisdictional limit, including, without limitation: (a) the loss of his job at CCDFI; (b) unpaid earnings, including, without limitation, his 2019 declared performance bonus of $150,000 and his $700,000 declared executive bonus related to CCDFI's private recapitalization initiative; (c) accrued and accruing interest thereon at the maximum rate allowed by law from the date of Defendant's breach until paid in full; (d) Plaintiff's reasonable attorney's fees and costs pursuant to, without limitation, NRS 608.140; and (e) all such other and further relief as this Court deems just and proper, including, without limitation, statutory penalties and post-judgment attorney's fees and costs.

75.     Moreover, Defendant Bystry's and Ollendorff's conduct was, and is, oppressive, malicious, evil, intentional, grossly improper, and performed with a conscious disregard for Plaintiff's rights, thereby warranting the assessment of exemplary and punitive damages.

. . .

. . .

## JURY DEMAND

Maddox demands a trial by jury on all claims asserted herein.

**WHEREFORE**, Maddox prays for Judgment in his favor and against Defendants CCDFI, Bystry and Ollendorff on the claims asserted in this Complaint as follows:

A.      A judicial declaration compelling Defendant CCDFI to honor its obligation to pay Maddox the 2019 declared performance bonus (i.e., $150,000) and the declared executive bonus related to CCDFI's private recapitalization initiative (i.e., $700,000);

B.      For monetary damages in an amount to be proven at trial;

C.      For punitive damages according to proof at trial;

D.      For pre-judgment interest on all such sums;

E.      For Plaintiff's reasonable attorney's fees and taxable costs, including, without limitation, those attorney's fees and costs incurred herein; and

F.      For all such other and further relief as this Court deems just and proper under the circumstances, including, without limitation, post-judgment attorney's fees and costs.

Dated this 16<u>th</u> day of March, 2021



By: /s/ Craig A. Marquiz, Esq.
Craig A. Marquiz, Esq.
3088 Via Flaminia Court
Henderson, NV 89052
Attorney for Plaintiff